UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| WILLIAMS/GERARD PRODUCTIONS, INC., an Illinois corporation,<br>           Plaintiff,<br><br>v.<br><br>JEROME BAKER, an individual; and INVT, LLC, a Delaware limited liability company,<br>           Defendants. | No. 09 CV 507<br><br>Judge John W. Darrah |

## MEMORANDUM OPINION AND ORDER

This matter is before the Court upon Defendants Jerome Baker ("Baker") and INVT, LLC's ("INVT") Motion to Dismiss Plaintiff Williams/Gerard Productions' ("WGP") Complaint for lack of jurisdiction. For the reasons stated below, the motion is denied.

## BACKGROUND

This case arises from Baker's prior employment with WGP. WGP is an event production business headquartered and incorporated in Chicago, Illinois, with satellite offices in New York and Virginia. WGP's Chicago office maintains all of WGP's financial books, records, and email servers. Additionally, WGP uses an Illinois bank account to pay the salaries and commissions of all its employees.

WGP employed Baker as a Sales Representative and Executive Producer from August 1, 2003 to July 28, 2008. During that time frame, Baker was assigned to WGP's Virginia office. Initially, Baker lived in Virginia; however, in October 2005, Baker moved to Memphis, Tennessee, where he continued to report to WGP's Virginia office.

1

After resigning from WGP, Baker moved to Jacksonville, Florida, where he currently resides.

Although assigned to WGP's Virginia office, WGP required Baker to visit its Chicago office for business purposes. WGP alleges that: (1) Baker traveled to the Chicago office on numerous occasions to attend financial and business meetings; (2) Baker used WGP employees, contractors, and vendors located in Illinois for the production of WGP events on a regular basis; and (3) Baker sent his expense reports to WGP's Chicago office for repayment. Moreover, WGP claims it included Baker's losses and profits in its Chicago office's revenue.

Baker states that over his five-year employment period, he had limited contacts with WGP's Chicago office employees. Baker alleges that: (1) he never reported to anyone in the Chicago office; (2) he used a limited amount of Chicago WGP employees to help him with his work; and (3) he traveled to the Chicago office for business meetings between five to seven times. Moreover, Baker alleges his losses and profits were included in WGP's Virginia office.

While working for WGP, Baker served as WGP's Sales Representative and Executive Producer for Physician Sales & Services, Inc. ("PSS"), a Florida corporation. Baker maintains that he worked with PSS prior to his employment with WGP. However, WGP alleges that Baker did not have contact with PSS until his employment with WGP. In January of 2008, on behalf of WGP, Baker contracted to produce an event show for PSS that would take place September of 2008. Baker never secured a written agreement or monetary deposit from PSS on behalf of WGP. Although it never received a written agreement or monetary deposit from PSS, WGP recorded PSS's account in its Chicago

office's financial books and records. In addition, Baker's expenses incurred in the production of his event for PSS were sent to WGP's Chicago office for reimbursement.

By June of 2008, two of Baker's mentors, Dan Cullather, a partner from WGP's Virginia office, and Scott Cullather, the general manager from WGP's New York office, resigned from WGP. On June 5, 2008, Scott Cullather created INVT, a competing production company. INVT has its principal place of business in New York and is incorporated in Delaware.

On June 10, 2008, while still residing in Tennessee, Baker sent Gary Corliss ("Corliss"), the Chief Operating Officer and Executive Vice President for PSS, an email, stating Baker's intent to divert PSS's business to INVT. On July 25, 2008, Baker resigned from WGP.

INVT hired Baker on August 1, 2008, and produced PSS's September show. These events led to WGP's action here, alleging disputed claims for breach of fiduciary duty, civil conspiracy, and an action for accounting against Baker and INVT.

For jurisdictional purposes, INVT and WGP dispute the amount of contacts INVT has with Illinois. WGP alleges INVT regularly uses Illinois contractors. INVT states that it has only used two Illinois contractors that worked ten to twelve days for INVT. One of the Illinois contractors completed work for INVT in Washington, D.C. Moreover, INVT alleges that it did not recruit these contractors; rather, these contractors sought work from INVT.

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(2), motion to dismiss for lack of personal jurisdiction, tests the federal court's exercise of personal jurisdiction over a defendant.

3

Fed.R.Civ.P. 12(b)(2). When a defendant challenges the court's exercise of personal jurisdiction, the burden switches to the plaintiff to prove that the court's exercise of personal jurisdiction is proper. *Rar, Inc. v. Turner Diesel, Ltd.*, 107 F.3d 1272, 1276 (7th Cir. 1997). The plaintiff must make a *prima facie* showing that exercising jurisdiction over the defendant is proper. *Michael J. Neuman & Assoc., Ltd. v. Florabelle Flowers, Inc.*, 15 F.3d 721, 724 (7th Cir. 1997). If the defendant submits evidence contradicting jurisdiction, the plaintiff must "go beyond the pleadings and submit affirmative evidence supporting the exercise of jurisdiction." *Purdue Research Foundation v. Sanofi-Synthelabo*, 338 F.3d 773, 783 (7th Cir. 2003)(*Purdue*). Any factual disputes in the pleadings and affidavits are rendered in favor of the party who asserts jurisdiction; however, any un-refuted facts contained in the defendant's affidavits are rendered in favor of the defendant. *Jamik, Inc. v. Days Inn of Mount Laurel*, 74 F. Supp. 2d 818, 821 (N.D. Ill. 1999).

A federal court has proper personal jurisdiction over a non-resident defendant only if the court of the state in which it sits could exercise that jurisdiction. *Edelson v. Ch'ien*, 352 F.Supp. 2d 861, 865-66 (N.D. Ill. 2005)(*Edelson*). The Court must first look to Illinois statutory law to determine whether this Court has jurisdiction over the Defendants. *Jennings v. AC Hydraulic A/S*, 383 F.3d 546, 548 (7th Cir. 2004)(*Jennings*). Next, the Court considers whether its exercise of jurisdiction is consistent with due process. *Jennings*, 383 F. 3d at 548. Moreover, the Seventh Circuit has determined that "there is no operative difference between the limits imposed by the Illinois Constitution and the federal limitations on personal jurisdiction." *Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 715 (7th Cir. 2002).

## ANALYSIS

### *Illinois Long-Arm Statute*

735 ILCS 2-209(a)(2) states, in pertinent part, that an Illinois court may exercise personal jurisdiction over a person who commits a "tortious act within this State." Where the alleged injury is economic in nature, "the plaintiff needs to show more than 'the harm was felt in Illinois,' the plaintiff must also show an 'intent to affect an Illinois interest.' " *Edelson* 352 F.Supp. 2d 861 at 867.

Baker alleges that he never committed a tort in Illinois. Instead, Baker alleges the tort occurred in Tennessee because that is from where his June 10, 2008 email to Corliss, in an attempt to divert PSS business, was sent. However, although Baker was physically located in Tennessee when he sent his email to Corliss, his conduct had an effect felt in Illinois. WGP's office felt an economic effect because the PSS account was recorded in WGP's Chicago office's financial statements. WGP felt more than an economic loss as Baker harmed WGP's business interests. As pled by WGP, after Baker sent his June 10, 2008 email to Corliss, he continued to send WGP's Chicago office expenses related to his work with PSS. Baker intentionally chose to deceive WGP's Chicago office into believing that Baker was working with PSS on behalf of WGP. Finally, Baker intended to affect WGP's interest because he intentionally diverted PSS's business to another company. Because Baker intended to and did affect WGP's Chicago office's interest, personal jurisdiction exists over Baker under Illinois' long-arm statute.

Furthermore, 735 ILCS 2-209(c) provides jurisdiction over a non-resident based on the standards of due process under the United States Constitution. As addressed below, jurisdiction over INVT exists under constitutional due process.

5

*Specific Jurisdiction*

Due process allows a court to exercise personal jurisdiction over a non-resident defendant if the defendant has certain minimum contacts with the forum "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945). The minimum contacts necessary are those acts from which the defendant "purposely avails himself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla,* 357 U.S. 235, 253 (1958). Specifically, these minimum contacts must either arise out of or relate to the defendant's contacts with the forum. *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414 (1984)(*Helicopteros*). Moreover, these contacts must be significant enough that the defendant could have reasonably anticipated being haled into court in the forum with respect to the matter at hand. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 474 (1985).

Baker has the requisite minimum contacts with Illinois to exercise specific personal jurisdiction over him here. As explained above, Baker was the head sales representative on the PSS account. As such, Baker secured the PSS account for WGP, which was recorded in WGP's Chicago office's financial records. Further, while working for WGP, Baker used employees from WGP's Chicago office to aid him with the PSS account. Additionally, Baker sent all expenses regarding his work with PSS to WGP's Chicago office for reimbursement. Even after Baker sent an email to Corliss to divert PSS's business, Baker continued to send all his expenses from his work with PSS to WGP's Chicago office for reimbursement. Baker intended to divert PSS from WGP;

and, as such, Baker should have reasonably foreseen defending himself on a breach-of-fiduciary-duty cause of action within this forum.

Baker alleges that even if he were to have the requisite minimum contacts with this forum, this Court could not exercise personal jurisdiction over him due to the Fiduciary Shield Doctrine. The Fiduciary Shield Doctrine prevents a court from exercising personal jurisdiction over a defendant, "whose presence and activity in the state which the suit is brought were solely on behalf of his employer or other principal." *C.S.B. Commodities, Inc., v. Urban Trend (HK) LTD.*, 2009 WL 57455, 7 (N.D. Ill. 2009) (citing *Rice v. Nova Biomedical Corp.*, 38 F.3d 909, 912 (7th Cir. 1995). However the application of this doctrine is discretionary or equitable, not absolute. *Consumer Benefit Services, Inc., v. Encore Marketing International, Inc.*, 2002 WL 31427021, 3 (N.D. Ill. 2002)(*Consumer*). Courts will remove the shield if: (1) the individual's personal interest motivated his actions and presence, and (2) the individual's actions are discretionary. *Consumer*, 2002 WL 31427021, at 3. Baker's personal interest in diverting PSS motivated his actions; therefore, the Fiduciary Shield Doctrine does not apply. Therefore, this Court may exercise specific personal jurisdiction over Baker.

INVT, on the other hand, does not have the requisite minimum contacts with the forum to support specific personal jurisdiction. The sole contacts INVT has with this state are hiring two contractors. Although WGP alleges INVT has numerous contacts with Illinois contractors, such contacts do not arise out of WGP's cause of action. Furthermore, WGP has not provided any evidence, linking Baker's acts with INVT.

*General Jurisdiction*

Nevertheless, where a defendant has "continuous and systematic general business contacts" with a forum, a court may exercise general jurisdiction over the defendant consistent with the Due Process Clause. *Helicopteros,* 466 U.S. at 416. General jurisdiction exists where a defendant's contacts are extensive enough that it would be fundamentally fair to require the defendant to answer in an Illinois court for "any litigation arising out of any transaction or occurrence taking place anywhere in the world." *Purdue,* 338 F.3d at 787.

In addition to having specific personal jurisdiction, Baker has had sufficient contacts with the forum state to allow an exercise of general personal jurisdiction over him. Baker traveled to Illinois for work on numerous occasions over a five-year period. Baker's paycheck and expense reports were paid from an Illinois bank account. Furthermore, Baker maintained contact with and sought the help of several of WGP's Chicago office employees over a five-year period.

INVT also has had sufficient contacts with this forum to allow an exercise of general personal jurisdiction over it. INVT used Illinois contractors on two occasions for a time frame of ten to twelve days. Additionally, WGP alleges that as of September 2008, INVT solicited and sustained the benefits of multiple Illinois contractors. As such, these contacts are continuous and systematic enough for this Court to exercise general personal jurisdiction over INVT.

## CONCLUSION

For the foregoing reasons, personal jurisdiction exists over both Baker and INVT. Defendants' Motion to Dismiss Plaintiff's Complaint for lack of personal jurisdiction is accordingly denied.

Dated 5-6-09

JOHN W. DARRAH
United States District Court Judge

9